UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RAZAVI,<br><br>        Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF VETERANS AFFAIRS, et al.,<br><br>        Defendants. | No.  2:20–cv–1825–KJM–KJN PS<br><br>FINDINGS AND RECOMMENDATIONS ON DEFENDANTS' MOTION TO DISMISS; ANCILLARY ORDER<br><br>(ECF No. 4) |

Plaintiff asserts six claims (negligence, defamation, intentional infliction of emotional distress, and three medical malpractice claims) against defendants, the Department of Veterans Affairs ("V.A.") and the United States.[1] (ECF No. 1.)  Defendants move to dismiss all but one of plaintiff's claims under Rules[2] 12(b)(1) and (b)(6), arguing the court lacks subject matter jurisdiction over some claims and cannot hear others because they are time-barred.  (ECF No. 4.)

The court recommends the motion to dismiss be GRANTED, and all claims (save the medical malpractice claim regarding plaintiff's heart surgery) be DISMISSED WITH PREJUDICE.

///

---

[1] Defendants' motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(21) for the entry of findings and recommendations.  See Local Rule 304.

[2] Citation to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

1

**BACKGROUND**[3]

Plaintiff is a disabled veteran who has used V.A. services since at least 1984. According to the complaint, plaintiff was exposed to Methylethylketone ("MEK"), which affected his lungs and sinuses, while on active duty in the military. After plaintiff's military service concluded in the 1980s, a V.A. vocational rehabilitation specialist approved plaintiff for welder school, but plaintiff declined due to a mobility impairment. Plaintiff became a teacher, but later requested retraining due to his impairment; the V.A. rehabilitation specialist denied plaintiff's request.

In 1984, plaintiff was diagnosed with arthritis of the spine. Over the years, plaintiff was "given only x-rays despite his pleas for an MRI," and those x-rays "did not accompany a required radiology report to enable doctors to properly interpret results." In October 2017, plaintiff's primary-care doctor administered an MRI, diagnosed plaintiff with spinal stenosis, and recommended surgery. Plaintiff underwent surgery in a month later.

Sometime in 2012, V.A. employees indicated on plaintiff's medical records that plaintiff was abusing his pain-medications. Also around this time, plaintiff's now-former spouse had an affair with a V.A. employee. When plaintiff learned of the affair, he complained to V.A. officials, but the officials did nothing. Plaintiff divorced his wife in 2011.

In the fall of 2018, a V.A. physician diagnosed plaintiff with atrial fibrillation. On January 26, 2019, plaintiff went to the Mather hospital complaining of chest pains, but was turned away. He returned the next day, and tests indicated a heart attack. Plaintiff underwent heart surgery in February 2019 at U.C. Davis, where doctors indicated plaintiff should have received a "heart stress test" at Mather. "[P]roper treatment would have prevented . . . a heart attack."

Plaintiff filed administrative claims about the above matters, which the V.A. received on November 7, 2019; these claims were denied. (ECF No. 4-2). In August 2020, plaintiff filed his complaint in this court. (ECF No. 1.) Defendants now move to dismiss, and plaintiff opposes; Plaintiff failed to appear at the January 7, 2021 hearing. (ECF Nos. 4, 5, 7, 9.)

---

[3] The background facts derive from the complaint (ECF No. 1), as well as from plaintiff's administrative complaint (ECF No. 4-3). The facts are construed in a light most favorable to plaintiff—the non-moving party. Faulkner, 706 F.3d at 1019.

**DISCUSSION**

Liberally construed, plaintiff's complaint states six separate claims: three negligence claims concerning his medical treatment at the V.A. for spine, heart, and MEK-related issues; one claim for negligence in the "assignment of vocational rehabilitation"; a defamation claim concerning the alleged alteration of plaintiff's medical records; and one claim for alleged emotional distress related to his ex-wife's affair. (ECF No. 1.)

Defendants move to dismiss most claims.[4]  Defendants argue: (I) the court has no jurisdiction to hear (A) the defamation claim because the Federal Tort Claims Act does not waive sovereign immunity for libel or slander claims; (B) plaintiff's MEK and vocational-rehabilitation claimsbecause denials of a veteran's benefits are reviewable only by the U.S. Court of Appeals for Veterans Claims; and (C) the MEK-negligence claim, because it allegedly arose during plaintiff's years of military service and so is barred under the Feres doctrine.  Further, defendants argue (II) all claims (aside from the 2019 heart treatment-claim) are time-barred, as they arose more than two years prior to the filing of plaintiff's administrative claims.  (ECF No. 4.)

Plaintiff counters that: (I)(A) he would like to transform his defamation claim into a negligence claim; (B) the court has subject matter jurisdiction over the MEK- and vocal-rehab-claims because plaintiff is asserting negligence claims, not attempting to obtain V.A. benefits; and (C) the Feres doctrine does not bar a claim based on an independent injury after a soldier has been discharged, and plaintiff's claim concerns the V.A.'s treatment of his MEK exposure, not the initial exposure itself.  Further, plaintiff argues (II) the deadline on his untimely claims should be equitably tolled for several reasons, including that he has physical and mental disabilities, and that he has no legal training.  (ECF No. 5.)

Defendants note in their reply that plaintiff accepts the untimeliness of his claims, as they arose more than two years prior to receipt of the administrative claim.  Defendants argue plaintiff's position regarding his equitable tolling request falls short of what is permitted under the doctrine.  (ECF No. 7.)

---

[4] Defense counsel confirmed at the hearing that defendants are not moving to dismiss the second medical-malpractice claim concerning plaintiff's 2019 heart attack (cause of action (1)(b)).

Legal Standards for Pleadings and Responses

Rule 8(a) calls for a complaint to contain: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Under Rule 12(b), a responding party may present certain defenses to a complaint by motion. This includes challenges to the court's subject matter jurisdiction under Rule 12(b)(1), which tests the federal court's power to hear a claim. This also includes challenges to the sufficiency of the complaint under Rule 12(b)(6), which tests whether a complaint has "fail[ed] to state a claim upon which relief can be granted." A Rule 12(b)(6) challenge can test whether the complaint lacks either a cognizable legal theory or enough facts to support a cognizable legal theory. Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015).

**I.   Challenges to the court's subject matter jurisdiction are well taken.**

Legal Standards - Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction." A–Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Id. "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Rule 12(h)(3). Subject matter jurisdiction may be shown "either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

In a facial attack, the court tests whether "the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a Rule 12(b)(1) motion of this type, the factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). However, district courts "may review evidence beyond the complaint [when resolving a facial attack] without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039.

Analysis

**A.  Defamation claims cannot be had against the United States.**

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941).  The Federal Tort Claims Act ("FTCA") can serve as a waiver of sovereign immunity for certain tort claims.  28 U.S.C. § 1346(b)(1).  However, "Congress was careful to except . . . several important classes of tort claims."  Chadd v. United States, 794 F.3d 1104, 1108 (9th Cir. 2015).  This includes claims for libel or slander, which the Ninth Circuit has interpreted as including claims of defamation. Sabow v. United States, 93 F.3d 1445, 1457 (9th Cir. 1996) (noting that defamation is "an excepted tort" under 28 U.S.C. § 2680(h)); see also Head v. United States, 2020 WL 7240432, at *1 (9th Cir. Dec. 9, 2020) (looking beyond the label used by plaintiff, "damage to [plaintiff's] reputation" from "press releases defaming his reputation" deemed a defamation claim "for which the United States has not waived sovereign immunity.").

Here, plaintiff's third cause of action is styled a "defamation" claim, and concerns the way certain employees at the V.A. damaged his reputation by recording plaintiff's use of pain-reducing medication.  Any attempt to assert this claim under a defamation cause of action would be barred by Section 2680.  Sabow, 93 F.3d at 1457; see also Head, 2020 WL 7240432, at *1.

Perhaps recognizing this fact, plaintiff requests in his opposition brief that he be allowed to amend this claim, intending to argue that the same facts can give rise to a negligence claim. (ECF No. 5 at 11.)  Plaintiff proposes his new claim would state that in 2012, his medical records were "altered to read that [he] was abusing his medication," that the V.A. employees had a duty to refrain from this conduct, and their breach of that duty caused him pain and suffering because he was no longer allowed prescriptions for those pain killers.  To the extent this claim could be asserted under a negligence theory, the court continues its analysis in Section II, below.

///

///

///

**B.    The Court of Veterans Claims has exclusive jurisdiction over the V.A.'s decisions regarding the provision of benefits.**

Review of decisions regarding veterans' benefits rests with the United States Court of Appeals for Veterans Claims. See 38 U.S.C. § 511(a). District courts lack jurisdiction for such claims. See Veterans for Common Sense v. Shinseki, 678 F.3d 1013, 1021-23 (9th Cir. 2012) (en banc). This jurisdictional bar extends to any claim where "adjudicating veterans' claims requires the district court to determine whether the V.A. acted properly in handling a veteran's request for benefits, [as well as] those decisions that may affect such cases." Id. at 1025. The bar does not, however, extend to medical-negligence claims brought under the FTCA, which "specifically confers jurisdiction on federal district courts to hear" claims involving medical negligence. Tunac v. United States, 897 F.3d 1197, 1203 (9th Cir. 2018) (citing Veterans for Common Sense, 678 F.3d at 1023 n.13).

Here, it is clear to the court that plaintiff's second claim regarding his experiences with the V.A.'s vocational rehabilitation program are barred by Section 511(a). Plaintiff contests the V.A.'s decisions regarding his vocational training, specifically the agency's decision to deny him training beyond what it provided. Plaintiff argues his claim is about the department's negligence and therefore should not be jurisdictionally barred. However, there is no way for the court to separate plaintiff's claim from the V.A.'s decision-making process, thus limiting the court's ability to hear this claim. Veterans for Common Sense, 678 F.3d at 1025.

The result is less clear concerning plaintiff's claim related to MEK exposure. Defendants contend plaintiff's Claim (1)(c) concerns the V.A.'s lack of treatment for the alleged exposure, and plaintiff's failure to name a specific medical decision makes his claim about the V.A.'s general provision of medical benefits. Plaintiff contends this claim is, in fact, a medical negligence claim and should not be barred by Section 511. The court finds plaintiff's complaint is cloudy on the legal theory, but recognizes that plaintiff could potentially state facts under a negligence theory. Therefore, the court considers it a medical-malpractice styled claim, and the filing deadlines of such a claim, in Section II below.

///

**C.      Any claim related to injuries sustained during active service is barred.**

In <u>Feres v. United States</u>, the Supreme Court held that the United States cannot be held liable for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. 135, 146 (1950). This prohibition includes claims brought by military service personnel for exposure to hazardous substances. <u>See, e.g.</u>, <u>Monaco v. United States</u>, 661 F.2d 129, 133 (9th Cir. 1981) (applying <u>Feres</u> to bar claim by former member of military for claim that radiation exposure during military service caused cancer that manifested after military service).

Here, plaintiff's claim (1)(c) concerns his alleged exposure to a hazardous substance, MEK, while on active duty. Defendants contend this is exactly the type of claim barred by <u>Feres</u>, and argue this court has no subject matter jurisdiction over any such claim. Plaintiff contends his claim is not about his exposure to MEK while on active duty, but about the decisions of unnamed V.A. physicians in diagnosing and treating an MEK-related condition. Plaintiff cites to <u>United States v. Brown</u>, 348 U.S. 110 (1954), for support, noting that the Supreme Court has not barred claims that allege injuries sustained separate and apart from military service. Plaintiff then discusses his allegations regarding the V.A. doctors' treatment of the alleged MEK condition, including a sinus surgery, alleged lack of medical training, and other such occurrences. (ECF No. 5.) Given the liberal treatment pro se plaintiffs are afforded, the court herein considers a negligence claim for the unnamed physicians' alleged malpractice separate and apart from any claim concerning plaintiff's initial exposure. The court notes some of these facts discussed by plaintiff in his opposition brief also appear in the complaint. To the extent the MEK claim concerns V.A. physicians' treatment regime, this claim is discussed in Section II below.

**II.     Construing plaintiff's claims liberally, and considering the ability to amend, the limitations period has expired on all but plaintiff's heart-related negligence claim.**

<u>Legal Standards - Rule 12(b)(6)</u>

In evaluating whether a complaint states sufficient facts on which to base a claim, all well-pleaded factual allegations are accepted as true, <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007), and the complaint must be construed in the light most favorable to the non-moving party, <u>Corrie v.</u>

7

Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). However, the court need not accept as true conclusory factual assertions if "contradicted by documents referred to in the complaint," or "legal conclusions merely because they are cast in the form of factual allegations." Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). Thus, to avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). Simply, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 570. Plausibility means stating "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Pro se pleadings are to be liberally construed. Hebbe v. Pliler, 627 F.3d 338, 342 fn.7 (9th Cir. 2010) (liberal construction appropriate even post–Iqbal). Prior to dismissal, the court is to tell the plaintiff of deficiencies in the complaint and allow for correction—if it appears at all possible the defects can be corrected. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, if amendment would be futile, leave to amend need not be given. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

Analysis

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]" 28 U.S.C. § 2401(b). "The date on which a claim accrues is determined by federal law." Tunac, 897 F.3d at 1206. "In a medical malpractice case under the FTCA, a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its cause." Id. The plaintiff need not know who caused the injury, or that the injury was caused by negligence, in order for the claim to accrue. Id. (citing Dyniewicz v. United States, 742 F.2d 484, 486 (9th Cir. 1984)).

Here, plaintiff's assertions in the complaint, as backed up by assertions made in his administrative claim to the V.A., indicate all claims (except for plaintiff's heart-related medical-malpractice cause of action) are time barred. The V.A. received plaintiff's administrative

1  complaint on November 7, 2019, and so to be timely, plaintiff must have first become aware of
2  his claims on or after November 7, 2017.  28 C.F.R. § 14.2(a) ("A claim shall be presented as
3  required by 28 U.S.C. 2401(b) as of the date it is received by the appropriate agency."); Bailey v.
4  United States, 642 F.2d 344, 347 (9th Cir. 1981) (noting these regulations have been upheld by
5  the Ninth Circuit).  Construing the facts in a light most favorable to plaintiff, he would have
6  become aware of the spinal stenosis in October of 2017 when the V.A. physician "finally
7  administered an MRI" and diagnosed the spinal stenosis.  (ECF No. 1 at 6.)  This factual scenario
8  is the closest call of plaintiff's claims, as the other causes of action concern conduct that plaintiff
9  would have known of years prior to 2017.  Plaintiff states he received a sinus surgery a few years
10 after his military service concluded in the 1980s, and asserts that he complained to V.A.
11 physicians about alleged MEK exposure throughout this time.  (Id. at 9).  The alleged alteration of
12 plaintiff's medical records occurred in 2012.  (Id. at 12-13.)  The events concerning his wife's
13 affair occurred sometime around 2011.  (See ECF No. 4-3 at 9.)  Thus, claims (1)(a), (1)(c), (3),
14 and (4) are time barred.[5]  Tunac, 897 F.3d at 1206.

15    Plaintiff does not contest these accrual dates, but requests the court equitably toll his
16 claims as "extraordinary circumstances," given his severe physical and mental disabilities, his
17 lack of legal experience, and other events in his life.  (ECF No. 5.)  The limitations periods in 28
18 U.S.C. § 2401(b) are, in fact, subject to the doctrine of equitable tolling, see United States v.
19 Kwai Fun Wong, 135 S. Ct. 1625, 1633 (2015).  However, the "litigant seeking equitable tolling
20 bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently,
21 and (2) that some extraordinary circumstances stood in his way."  Credit Suisse Secs. (USA) LLC
22 v. Simmonds, 566 U.S. 221, 227 (2012).  As to the first element, "[t]he doctrine is not available to
23 avoid the consequence of one's own negligence and does not apply when a late filing is due to
24 claimant's failure to exercise due diligence in preserving his legal rights."  Hensley v. United

---

[5] As to claim 2, the court does not believe it has jurisdiction to hear a claim related to the vocational rehabilitation services provided by the V.A.  (See Section I.B., above.)  However, should the district court disagree, the undersigned also finds the voc-rehab claim to be time-barred.  Simply, this claim concerns events that took place sometime in the 1980s or '90s when plaintiff was employed as a teacher, and even if the court uses the 2007 event as the accrual date, this is still over a decade before plaintiff filed his administrative claim.  (See ECF 1 at 10-11.)

States, 531 F.3d 1052, 1058 (9th Cir. 2008) (cleaned up). However, "[t]he standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances." Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir.2011). As to the second element, the extraordinary circumstances must arise from "external circumstances beyond [the litigant's] direct control." Kwai Fun Wong v. Beebe, 732 F.3d 1030, 1052 (9th Cir. 2013) (quoting Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008)). Nevertheless, "a garden variety claim of excusable neglect . . . does not warrant equitable tolling." Id. (quoting Holland v. Florida, 130 S. Ct. 2549, 2564 (2010)). Instead, the extraordinary circumstances must have "made it impossible to file the document on time." Id.; see also Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) ("To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely oversight, miscalculation or negligence on the petitioner's part, all of which would preclude the application of equitable tolling.").

Here, plaintiff's argument in favor of equitable tolling is raised in his opposition briefing. (ECF No. 5 at 6-8.) Plaintiff asserts he is "severely physically and mentally disabled," "has no legal experience," "resides in a rural area where internet and phone service are very scar[c]e at times," has a post office with "long lines" and no queue for individuals with disabilities, and had to obtain his administrative-claims form in person after an hours-long wait. (Id. at 6-7.) Plaintiff also asserts he "hired the Veterans' Law Group [who] gave plaintiff the impression that they can handle an FTCA lawsuit" but later "learned [they] did not handle those cases," and later searched for an attorney to no avail. (Id. at 7.) Finally, plaintiff asserts he was not assigned a caretaker in 2017 after his "major back surgery," and was unable to do anything for 2 months" because of this fact. (Id.)

Courts in the Ninth Circuit have rejected most situations like plaintiff's when analyzing the extraordinary circumstances prong. See, e.g., Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary

circumstance warranting equitable tolling."); Allen v. Lewis, 255 F.3d 798, 801 (9th Cir. 2001) (indicating that short deprivations of legal papers at the beginning or the middle of the limitations period do not equitably toll the statute of limitations); see also, e.g., Wolf v. Ndoh, 2017 WL 5495516, at *7 (C.D. Cal. Nov. 15, 2017) ("A [litigant's] pro se status or unsuccessful search for counsel does not excuse the filing of an untimely petition."); Baker v. California Dept. of Corr., 484 Fed. Appx. 130, 131 (9th Cir. June 7, 2012) ("Low literacy levels, lack of legal knowledge, and need for some assistance to prepare [] petition are not extraordinary circumstances to warrant equitable tolling . . . ."); cf. also Harnish v. Martell, 2019 WL 994209, at *9 (C.D. Cal. Jan. 25, 2019), R&R adopted 2019 WL 1405542 (C.D. Cal. Mar. 28, 2019) (assuming limitations period could be equitably tolled for 41 days due to plaintiff's fall, fractured femur, leg amputation, and pain-management with codeine, ending on date when plaintiff could "advocate for himself by writing CDC 7362 Forms."); with Jones v. Santoro, 2020 WL 2838534, at *5 (C.D. Cal. May 29, 2020), R&R adopted 2020 WL 2840072 (C.D. Cal. June 1, 2020) (despite his hand injury, Petitioner could prepare legal filings with the assistance of other inmates in as few as 7 days, and that he failed to request Mr. Berry's assistance until December 2019, long after his AEDPA deadline had expired); Davis v. Malfi, 2014 WL 12845412, at *17 (C.D. Cal. Oct. 1, 2014), R&R adopted 2015 WL 1227955 (C.D. Cal. Mar. 16, 2015) ("The fact that Petitioner had the capacity to meet with doctors and discuss his options regarding his treatment, understand and weigh the options, consent to a given course of treatment, and request a variety of other medical services for inter alia his finger belies his claim of severe mental incapacitation."); O'Connell v. Yates, 2012 WL 7762176, at *7-*8 (C.D. Cal. 2012) (equitable tolling not warranted where plaintiff demonstrated his understanding of his rights by refusing to see a particular doctor, making repeated requests for medication refills and adjustments, and routinely seeking other health services); Long v. Paulson, 349 F. App'x 145, 146-47 (9th Cir. 2009) (declining to toll limitations period when plaintiff was in hospital for first eight days of limitations period because of lack of specific evidence showing mental incapacitation during hospitalization). Plaintiff's request falls

short of what is required under the doctrine, and so the undersigned recommends denial of plaintiff's request to equitably toll his time-barred claims.[6]

### RECOMMENDATIONS

Accordingly, it is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 4) be GRANTED;
2. All claims (except for the medical malpractice claim regarding plaintiff's heart surgery) be DISMISSED WITH PREJUDICE; and
3. The case proceed to scheduling on plaintiff's Claim (1)(b).

These findings and recommendations are submitted to the United States District Judge assigned to the case. 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

### ORDER

In light of, the above recommendations, the initial scheduling conference, currently set for February 4, 2021, is VACATED. The court will reschedule this conference after defendants have filed their answer and the parties have submitted their joint statement (see ECF No. 3, the court's "Order Setting Status Conference," at par. 5.) Plaintiff is strongly encouraged to communicate with defense counsel and participate in the drafting of this joint statement.

Dated: January 8, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

raza.1825

---

[6] At the hearing on this motion, the undersigned was planning to ask plaintiff if he had any other information to support an argument for equitable tolling, but as noted above plaintiff failed to appear at the hearing – once again demonstrating that plaintiff has failed to meet his burden.

12